UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Grenier et al., <br>     *Plaintiffs*, <br><br> v. <br><br> City of West Haven et al., <br>     *Defendants.* | Civil No. 3:11cv808 (JBA) <br><br><br><br> September 17, 2012 |

RULING ON DEFENDANTS' MOTION TO DISMISS

Plaintiffs Marc Grenier, administrator of the estate of Shengyl Rasim and James T. Brennan, representative of Rasim's minor children SCO and OCO filed suit against the City of West Haven, Colleen Smullen, former Chief of the West Haven Police Department, Sergeant Robert Urrata and Officer Christopher Stratton, and WHPD dispatchers Robert Guthrie and Frank Meyer. Defendants move [Doc. # 28] to dismiss: (1) minor Plaintiffs' loss of consortium claim and constitutional claims in Count One; (2) Plaintiffs' claims of substantive due process violations, supervisory liability and municipal liability in Count One; (3) Plaintiffs' negligence claims against Smullen and Urrata in Count Two; and (4) Plaintiffs' recklessness claims against Smullen and the City of West Haven in Count Three. Defendants do not move to dismiss Plaintiffs' equal protection claims in Count One. For the reasons discussed below, Defendants' motion [Doc. # 28] will be granted.[1]

---

[1] Plaintiffs indicated in their opposition that they do not object to the dismissal of Count Three as to the City of West Haven. At oral argument, Plaintiffs' counsel agreed to voluntarily withdraw several additional claims, without prejudice:
(1) Count One: *Monell* claim against the City of West Haven;
(2) Count One: Supervisory liability claim against Chief Smullen;
(3) Count Two: Negligence claim against Chief Smullen;
(4) Count Three: Recklessness claim against all Defendants (i.e., all of Count Three).

I.   Factual Allegations

Plaintiffs allege the following in their Amended Complaint. Selami Ozdemir was the father of the minor plaintiffs SCO and OCI, and their mother was the plaintiffs' decedent, Ms. Shengyl Rasim. (Am. Compl. ¶ 7.) On January 17, 2010, "defendant dispatchers were made aware on numerous instances that Shengyl Rasim was in dire need of police assistance to protect her from imminent harm and death at the hands of Selami Ozdemir." (*Id.* ¶ 8.)

Defendant dispatchers were "warned by telephone on numerous occasions" that Selami Ozdemir was intoxicated and armed, and was pursuing his wife "for the purpose of attacking her and inflicting severe bodily harm or death." (*Id.* ¶ 9.) Defendant dispatchers "failed to communicate the impending attack on Shengyl Rasim to officers of the West Haven police department," and Plaintiffs allege that the officers were "at or in the area of the plaintiff's decedent's home and fully able to intercede prior to Selami Ozdemir's murderous attack on Shengyl Rasim." (*Id.*)

A "short time" after the Defendant dispatchers' failure to communicate, "Selami Ozdemir arrived at the home brandishing [a] Glock, banged on the door, entered the home and summarily executed Shengyl Rasim with multiple rounds from the Glock, turned the gun on himself and committed suicide." (*Id.* ¶ 10.) The minor Plaintiffs were at the home and witnessed the murder/suicide and its immediate aftermath. (*Id.*)

Plaintiffs allege several specific failures on the part of each Defendant. Under Count One, Plaintiffs allege that Defendant dispatchers deviated from "appropriate police and dispatcher practices [which] amounted to neglect of duty . . . in direct violation of the general orders of the department." (*Id.* ¶ 11.) Plaintiffs also allege that Stratton's response "amounted to neglect of duty" (*id.* ¶ 12), and Sergeant Urrata's failed to "properly train the

2

defendant dispatchers and oversee and supervise [Stratton]" (*id.* ¶ 13). All Defendants are alleged to have failed to intervene (*id.* ¶ 15a), to have discriminated against the Plaintiffs who are "a Turkish immigrant and her children, on the basis of race, ethnicity or national origin" (*id.* ¶ 15b), to have participated directly in the alleged constitutional violations (*id.* ¶ 16a), to have "exhibited deliberate indifference" after having been informed "of the deficiencies and violations" (*id.* ¶ 16b), and to have "created and maintained a policy, practice or custom under which the unconstitutional conduct previously alleged[ly] occurred" (*id.* ¶ 16c). Defendants are also alleged to have been grossly negligent in supervising and failing to properly and effectively supervise subordinates who committed the wrongful acts. (*Id.* ¶ 16d.) As a result of these alleged failures, Plaintiffs "sustained damages including":

> ante mortem pain and suffering; fear of death; death itself; destruction of earning capacity and an inability to carry on and enjoy all of life's activities. The plaintiffs SCO and OCO were further damaged by witnessing and/or viewing the execution of their mother and the suicide of their father, and/or its immediate aftermath, by suffering resultant severe further emotional distress and anguish, and through the permanent impairment to, and loss of, their liberty interest and due process rights to the care, support and companionship of their mother resulting from the defendants' unconstitutional conduct.

(*Id.* ¶ 17.)

Under Count Two, all Defendants, except for Chief Smullen, are alleged to have been negligent in violation of Connecticut law. Count Four, which is not challenged here, alleges municipal liability pursuant to Conn. Gen. Stat. § 7-465 against Defendant City of West Haven.

3

II.     Discussion

In their motion to dismiss, Defendants argue that the minor Plaintiffs' claims of loss of consortium and § 1983 claims must be dismissed, as Connecticut does not recognize loss of consortium claims for parent/child relationships, and family members cannot assert derivative § 1983 claims. Relying on *DeShaney v. Winnebago County Dep't of Soc. Svcs.*, 489 U.S. 189 (1989) and its progeny, Defendants move to dismiss all Plaintiffs' due process claims in Count One for failure to state a claim pursuant to the "state created danger" doctrine, and Plaintiffs' claims of supervisory liability and municipal liability against Smullen, Urrata, and the City.

A.      Minor Plaintiffs' Constitutional Claims

As an initial matter, Plaintiffs agree that if the children's claims are viewed as loss of parental consortium claims, neither Section 1983 nor Connecticut state law would support liability. (Pl.'s Opp'n [Doc. # 37] at 8.)  Plaintiffs assert that the claims of the minor plaintiffs should be considered in light of the "right to intimate association" jurisprudence, rather than as loss of consortium claims or derivative § 1983 claims.

The Supreme Court has identified the right of intimate association as "a fundamental element of personal liberty," *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984), and the Second Circuit has identified the right of intimate association in the familial context, usually addressing claims that arise where state action is alleged to have interfered with the "preservation of family integrity," such as where children are seized by welfare authorities without a hearing or court order. *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977) ("Here we are concerned with the most essential and basic aspect of familial privacy[,] the right of the family to remain together without the coercive interference of the awesome

4

power of the state. This right to the preservation of family integrity encompasses the reciprocal rights of both parent and children. It is the interest of the parent in the 'companionship, care, custody and management of his or her children,' . . . and of the children in not being dislocated from the 'emotional attachments that derive from the intimacy of daily association,' with the parent.") (internal citations omitted).

Plaintiffs point to *Greene v. City of New York*, 675 F. Supp. 110 (S.D.N.Y. 1987) as support for the viability of a § 1983 claim for deprivation of the parent–child relationship in the wrongful death context. There, the Southern District upheld a claim brought by children of a woman killed in a police shooting. 675 F. Supp. at 114 ("Latisha and Lisa Greene's claims are strongly supported by the decisions of a number of other circuit courts: those circuits which have considered the question have concluded that there is a § 1983 claim for deprivation of the parent–child relationship in the wrongful death context."). What distinguishes the cases cited by Plaintiffs, including *Greene*, is that all involve active conduct on the part of the state officials resulting in injury, in contrast to this case, in which Defendants' inaction is claimed to have resulted in the death at the hands of a private third party. *See, e.g.*, *Patel v. Searles*, 305 F.3d 130, 137 (2d. Cir. 2002) (plaintiff's claim that state actors abridged his right of intimate association by knowingly spreading false information implicating plaintiff in the murder of his mother and sister stated a claim that implicated plaintiff's right to intimate association); *Rivera v. Marcus*, 696 F. 2d 1016, 1025 (2d Cir. 1982) (recognizing a right of intimate association for a sister (and foster parent) who alleged a § 1983 violation when her brother and half–sister were removed from her home by state authorities).

5

Defendants also contend that without an allegation that "the state action at issue was specifically aimed at interfering with protected aspects of the parent–child relationship," Plaintiffs' right of intimate association claim fails. (Def.'s Reply [Doc. # 42] at 3 (citing *Campos v. Weissman*, Civ. No. 9:07–CV–1263 (FJS/RFT), 2009 WL 7771872, at *8 (N.D.N.Y. Sept. 10, 2009)).) Indeed, although the Second Circuit has not explicitly ruled on this issue, *see Patel v. Searles*, 305 F.3d 130, 137 (2d. Cir. 2002) ("this Circuit has never held that a challenged action must be directed at a protected relationship for it to infringe on the right to intimate association"), the majority of Circuits, and district courts within this Circuit, have "expressly declined to find a violation of the familial liberty interest where the state action at issue was not aimed specifically at interfering with the relationship." *Russ v. Watts*, 414 F.3d 783, 787–88 (7th Cir. 2005) (collecting cases); *see also Torres v. Howell*, 3:03CV2227(MRK), 2006 WL 1525942, at *8 (D. Conn. May 30, 2006) ("The Court agrees and concludes that there is no constitutional harm to a plaintiff's parental rights cognizable under Section 1983 unless the parent–child relationship itself has been targeted.").

The Court's research has not found, and Plaintiffs' briefing does not identify, any cases in which children have been permitted to pursue a claim of interference with the right of intimate association without allegations that Defendants intended to interfere with the parent–child relationship. Because no intent to interfere has been alleged, and because only Defendants' inaction is charged with causing the mother's death, Defendants' motion to dismiss the minor Plaintiffs' intimate association claim will be granted.

B.     Due Process Claim under State–Created Danger Exception

"As a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v.*

*Winnebago County Dep't of Soc. Svcs.*, 489 U.S. 189, 197 (1989). Though the Second Circuit has held that there are certain circumstances in which state actors may be liable if they affirmatively created or enhanced the danger of private violence, *see Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir. 1993), Defendants assert that Plaintiffs have failed to state a plausible due process claim under this theory.

Plaintiffs argue that their state–created danger theory "rests on the fact that [the theory] may also embrace situations where 'the officers in some way had assisted in creating or increasing the danger to the victim.'" (Pl.'s Opp'n at 16 (citing *Dwares*, 985 F.2d at 99).) The issue is whether Plaintiffs' allegations that the dispatchers "fail[ed] to convey to responding police officers that Mr. Ozdemir was on his way to the family home in an 'irate' and 'intoxicated' condition," that Officer Stratton "dismissively [left] 341 Blohm Street, . . . making no effort . . . to locate Mr. Ozdemir in the vicinity," and that Sergeant Urrata's conduct in improperly "directing" Stratton state a plausible claim under the state–created danger exception.

The Second Circuit thoroughly reviewed the state of the state–created danger doctrine in *Okin v. Village of Cornwall–on–Hudson Police Dep't*, 577 F.3d 415, 428 (2d Cir. 2009), and specified that "the Due Process Clause may be violated when police officers' *affirmative* conduct—as opposed to *passive* failures to act—creates or increases the risk of private violence, and thereby enhances the danger to the victim." The Second Circuit held that "explicit approval of violence is but a subset of the affirmative conduct by state actors that can enhance the danger to a victim. The affirmative conduct of a government official may give rise to an actionable due process violation if *it communicates, explicitly or implicitly, official sanction of private violence.*" *Id.* at 429 (emphasis added).

7

Here, Plaintiffs have not alleged any "explicit approval" or "implicit approval" of private violence. *See, e.g., Okin*, 577 F.3d at 429–30 ("Viewing the evidence in the light most favorable to Okin, we find a genuine issue of material fact as to whether defendants implicitly but affirmatively encouraged Sears's domestic violence. A reasonable factfinder, . . . could infer that defendants' actions, such as discussing football with Sears during their response to Okin's complaint that he had beaten and tried to choke her, plainly transmitted the message that what he did was permissible and would not cause him problems with authorities. Moreover, the evidence suggests that the defendants repeatedly communicated to Sears that his violence would go unpunished.") (internal quotation marks omitted). As discussed at oral argument, the allegations in the Amended Complaint are based entirely on Defendants' *failure to act* or indifferent response to threats of private violence. Without allegations of affirmative (explicit or implicit) encouragement of private violence, claims of substantive due process violations are not viable under the state–created danger doctrine.

Thus, the Court will dismiss Plaintiffs' substantive due process claims. However, if discovery reveals a good faith basis for appropriate factual pleadings that would state a plausible claim of affirmative, implicit encouragement of private violence, a motion to amend will be entertained.

C.     Supervisory Liability Against Sergeant Urrata

Defendants argue that as a result of the *Iqbal* decision, the grounds for supervisory liability have been significantly narrowed, and that the "continued viability" of all five factors enumerated in *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) is in dispute as to supervisory liability claims under § 1983. *See, e.g., Vann v. Fischer*, No. 11 CIV. 1958 JPO, 2012 WL 2384428, at *5 n.9 (S.D.N.Y. June 21, 2012) ("These are only the first and third scenarios

8

listed in *Colon* in which personal involvement might be found, but the others have been invalidated by the Supreme Court's holding in *Iqbal* that 'a supervisor's mere knowledge of his subordinate's discriminatory purpose [does not] amount[ ] to the supervisor's violating the Constitution.'") (citing *Spear v. Hugles*, No. 08 Civ. 4026(SAS), 2009 WL 2176725, at *2 (S.D.N.Y. July 20, 2009) ("[O]nly the first and third *Colon* factors have survived the Supreme Court's decision in Iqbal"); *Hodge v. Sidorowicz*, No. 10 Civ. 428(PAC)(MHD), 2011 WL 6778524, at *16 (S.D.N.Y. Dec. 20, 2011), *report and recommendation adopted sub nom*; *Hodge v. Wladyslaw*, 2012 WL 701150 (S.D.N.Y. Mar. 6, 2012) (holding that *Iqbal* limits the analysis under *Colon* for constitutional claims of intentional discrimination, as seen here, but not necessarily for other kinds of claims)).

The Second Circuit has not yet addressed claims of supervisory liability in the wake of *Iqbal*. In *Servin v. Anderson*, No. 3:11cv539 (MRK), 2012 WL 171330, at *8 (Jan. 20, 2012) the district court considered the five *Colon* factors in denying a defendant's motion to dismiss a supervisory liability claim, as will this Court. Under *Colon*, personal involvement of a supervisory defendant may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

58 F.3d at 873.

Even applying the five *Colon* factors, however, the Complaint is devoid of specific factual allegations giving rise to a plausible claim of supervisory liability as to Sergeant Urrata.[2] Mere recitation of the *Colon* factors, without factual allegations showing direct participation, or any specific facts tending to show deliberate indifference, is insufficient to meet *Iqbal*'s plausibility standard. Further, the Amended Complaint references the creation of "a policy or custom under which unconstitutional practices occurred," but does not allege any facts beyond that (*id.* ¶ 16c), and the remaining two factors—gross negligence and deliberate indifference—are similarly conclusorily recited in paragraphs 16d and e of the Complaint, without any specific factual allegations to show their plausibility. Thus,

---

[2] The Amended Complaint alleges supervisory liability as follows:

The injuries, losses and/or death suffered by the plaintiffs, were caused by the unconstitutional acts of the defendant supervisor, the defendant Chief, and the City of West Haven, through its policies, practices and customs, in that they, upon information and belief and the opportunity for further discovery:

- a. participated directly in the constitutional violations;
- b. the defendants, after being informed of the deficiencies and violations previously alleged, failed to address or remedy the wrongs, but instead exhibited deliberate indifference to them;
- c. the defendants created and maintained a policy, practice or custom under which the unconstitutional conduct previously alleged occurred, or allowed the continuance of such a policy, practice or custom despite their actual or constructive knowledge of them;
- d. the defendants, despite actual or constructive knowledge of the deficiencies and constitutional violations alleged herein were grossly negligent in supervising and failing to properly and effectively supervise subordinates who committed the wrongful acts; and/or,
- e. the defendants, with actual or constructive knowledge of the deficiencies and constitutional violations alleged herein, exhibited deliberate indifference to the constitutional rights of the plaintiffs.

(Am. Compl. ¶ 16a–e.)

Defendants motion to dismiss the supervisory liability claim in Count One against Sergeant Urrata will be granted.

D.   Negligence

At oral argument, Plaintiffs' counsel voluntarily withdrew Count Two as against Chief Smullen, and Defendants' counsel represented that they would not challenge Count Two as it pertains to Sergeant Urrata, the remaining Defendant–dispatchers, or Officer Stratton. Thus, Plaintiffs claims against Sergeant Urrata, Defendant–dispatchers Guthrie and Meyer, and Officer Stratton remain for adjudication.

IV.   Conclusion

For the reasons discussed above, Defendants' motion [Doc. # 28] to dismiss is GRANTED. The minor Plaintiffs' constitutional claim alleging a violation of the right to intimate association is dismissed, Plaintiffs' substantive due process claims under the state–created danger doctrine are dismissed, and Plaintiffs' claim of supervisory liability against Sergeant Urrata is also dismissed.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 17th day of September, 2012.